IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BENJAMIN P. KILLENSWORTH,  )
                           )
          Plaintiff,       )
                           )
                           )     CIV-10-20-L
v.                         )
                           )
MICHAEL J. ASTRUE,         )
  Commissioner of Social Security )
   Administration,         )
                           )
          Defendant.       )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the final decision of Defendant Commissioner denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382(c)(7). The matter has been referred to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. §636(b)(1)(B). Defendant has answered the Complaint and filed the administrative record (hereinafter "TR_"), and the parties have briefed the issues. For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I.   Background

Plaintiff filed his application for benefits on September 9, 2005. (TR 36). At that time, Plaintiff was 18 years old. He alleged that he was disabled due to a learning disability in reading and diabetes mellitus. (TR 95). Plaintiff stated he was diagnosed

with diabetes in August 2005 and prescribed medication as treatment. (TR 98). In a subsequent report submitted to the agency, Plaintiff stated that he was prescribed medication to treat high blood pressure in March 2007. (TR 46). His application was denied initially and on reconsideration. (TR 35, 36). At Plaintiff's request, a hearing de novo was conducted before Administrative Law Judge Keltch ("ALJ") on March 4, 2008.

At the hearing, Plaintiff testified that he was 20 years old and lived with his parents, four siblings, and a nephew. He stated he had a high school education, had completed vocational training as a welder, and had worked only a brief period of one and a half weeks in a fast food restaurant as a counter clerk. Plaintiff stated he stopped working because of high blood sugar levels. He testified he could write, read slowly, drive a car, sometimes used a CPAP machine for obstructive sleep apnea, and took medications for diabetes, including daily insulin injections, high cholesterol levels, and high blood pressure. Plaintiff stated he felt tired and slept about three hours during the daytime. He testified that during the day he helped his mother with household chores, including grocery shopping and cleaning, and liked to play basketball, go to his cousin's house to play video games, and sometimes go out on dates. Plaintiff stated he could not work at that time because he was "[t]rying to get [his] diabetes under control," but that he "had a couple jobs in mind" when asked if he had considered seeking other employment. (TR 277, 279). Plaintiff stated that he was on a special diet for his diabetes and had lost about 40 pounds. (TR 282, 286). Plaintiff described sores on his feet and swelling in his feet.

Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because he retained the ability to perform work at the light exertional level. (TR 21-25). The Appeals Council declined Plaintiff's request to review the decision. (TR 4-6). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Scope of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account

whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 416.920(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. ALJ's Analysis of Plaintiff's Mental Impairment

Plaintiff contends that the ALJ committed reversible error by failing to follow the established technique for evaluating a disability claimant's mental impairment(s), as set forth in 20 C.F.R. § 416.920a.

In his decision, the ALJ found at step two that Plaintiff had severe impairments, including diabetes mellitus, high blood pressure, expressive language disorder, obesity,

4

and sleep apnea. (TR 21). At step three, the ALJ simply stated that Plaintiff's severe impairments "do not, singly or in combination meet or equal the level of severity of any impairment found in Appendix 1, Subpart P, of Regulations No. 4." (TR 21-22). At step four, the ALJ found that Plaintiff's subjective statements were not entirely credible and that there was no evidence Plaintiff's "ability to carry on the activities of daily living has been eroded to the extent that he would be precluded from engaging in all work activity." (TR 23). The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level and that he had no postural, communicative, or environmental limitations. (TR 23).

When a disability claimant has a mental impairment, the ALJ must apply a "special technique." 20 C.F.R. § 416.920a. If a claimant establishes a medically determinable mental impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)." Id. The ALJ accomplishes this by rating the claimant's limitations in "four broad functional areas," including "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Id. The ALJ then uses the ratings to determine the severity of the mental impairment(s). To document the use of this technique, the ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique . . . . The decision must include a specific finding as to the degree of limitation in each of the functional areas . . . ." Id.

Defendant Commissioner concedes that, despite the clear wording of the governing regulation, the ALJ erred by failing to document his findings as to any

functional limitations stemming from Plaintiff's undisputed mental impairment of expressive language disorder. However, Defendant asserts that the error was harmless. See Fischer-Ross v. Barnhart, 431 F.3d 729, 733-734 (10th Cir. 2005)(holding "harmless error analysis 'nevertheless may be appropriate to supply a missing dispositive finding ... where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'")(quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004); Mushero v. Astrue, 384 Fed. Appx. 693, 695, 2010 WL 2530728, * 2 (10th Cir. June 24, 2010)(unpublished op.)(finding ALJ's failure to follow special technique subject to harmless error analysis).

Plaintiff's argument that the ALJ's third step error requires reversal in every instance is without merit. There is no *per se* reversal rule recognized in this circuit for the error that occurred here. Plaintiff's reliance on the unpublished decision in Grotendorst v. Astrue, 2010 WL 1049791 (10th Cir. Mar. 22, 2010), is misplaced. In Grotendorst, the appellate court found the ALJ had determined the disability claimant's mental impairments were not severe without expressing consideration of the "four broad functional areas" set out in the regulations. Id. at * 4. The court expressly stated that it was required to determine whether the error was harmless, and the court found the error was not harmless because of the record evidence that the claimant's mental impairment had resulted in moderate limitations in her ability to concentrate. Id.

In this case, the ALJ found that Plaintiff had a severe mental impairment due to expressive language disorder. The ALJ then found that Plaintiff's mental impairment did not limit his ability to perform basic mental work-related activities. Because there is substantial evidence in the record to support this finding, the ALJ's error in failing to document the "functional limitations" findings was harmless.

At step four, an ALJ must "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC]." 20 C.F.R. §416.945(e); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 5. "In assessing RFC with impairments affecting hearing or speech, the adjudicator must explain how the individual's limitations would affect his or her ability to communicate in the workplace. Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 6 (July 2, 1996).

In his decision, the ALJ summarized the report of the consultative psychological examiner, Dr. Green. (TR 22). After interviewing Plaintiff and conducting psychological testing on November 27, 2007, Dr. Green reported a diagnosis of expressive language disorder and the possibility of another unspecified learning disorder. (TR 224). Dr. Green stated that Plaintiff exhibited a low average range of intellectual functioning with a full-scale IQ of 86 and a "significantly lower" verbal score, indicating the presence of

learning disabilities. (TR 223). As part of the consultative evaluation, Dr. Green completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" in which the psychologist opined that Plaintiff exhibited no impairment in his ability to understand, remember, and carry out instructions, no impairment in his ability to interact appropriately with coworkers, supervisors, and the public, and no other limitations affected by his mental impairment. (TR 225-226). There is no record of treatment of Plaintiff for a mental impairment on or after the date he filed his application, and no physician or mental health professional indicated Plaintiff's ability to perform mental work-related activities was limited by his mental impairment. Dr. Green's report and opinion provide substantial evidence to support the ALJ's step four RFC finding.

Plaintiff contends that his history of placement in special education classes reflects a significant mental impairment. Plaintiff further contends that a statement provided by his special education teacher, which was not mentioned by the ALJ in his decision, provided "other source" evidence that Plaintiff's mental impairment significantly affected his mental work-related abilities of "paying attention, with refocusing to task, and carrying out multi-step instructions," and with "organization and completing assignments on time." Plaintiff's Opening Brief, at 14. Plaintiff contends the ALJ's decision must be reversed due to his failure to discuss this probative evidence.

The record reflects Plaintiff did attend special education classes, although by high school he was in a specialized class only in one subject, English. In an Individualized Education Program ("IEP") Review completed during Plaintiff's eleventh grade school

year, the staff noted that Plaintiff was continued in specialized classes in English but that he was performing successfully in all other core subject areas and was succeeding in his vocational training as well. (TR 75). Plaintiff testified he completed a vocational program in welding during high school. Thus, the record of his special education placement did not provide probative evidence of specific work-related limitations resulting from his mental impairment.

Plaintiff's twelfth grade English teacher, who noted she had taught Plaintiff for only three months, completed a Teacher Questionnaire. The questionnaire focused on the six functional criteria for child disability applicants. (TR 56-63). The teacher indicated on the form that Plaintiff had difficulties in some areas of acquiring and using information and attending and completing tasks but had little or no problems with interacting and relating to others or caring for himself. Because Plaintiff was 18 years old at the time he filed his application, the regulations governing child disability applications are not relevant. For that reason, and because the Teacher Questionnaire is undated and unsigned, the ALJ did not err in failing to expressly consider the completed form as probative evidence of mental work-related limitations impacting Plaintiff's RFC for work. Moreover, as the teacher was not an acceptable medical source, the ALJ was not required to weigh the completed Teacher Questionnaire alongside other medical evidence. See 20 C.F.R. § 416.913(d)(2)(educational personnel are "other sources" who may provide evidence of the severity of an impairment and how it affects a claimant's ability to work). The Teacher Questionnaire did not provide relevant "other source"

evidence that the ALJ should have explicitly discussed in his decision. The questionnaire did not assess the severity of Plaintiff's mental impairment or its impact on his ability to work. Rather, the questionnaire provided an overall indication of Plaintiff's strengths and weaknesses, none of which were rated "very serious," in one class over a three month period.

The ALJ found that Plaintiff's expressive language disorder was a severe impairment but that it did not limit his ability to perform basic work activities required for unskilled work. Dr. Green's report provides substantial medical evidence to support this finding. Plaintiff points out that Dr. Green recommended further "achievement testing" with respect to another possible learning disability. However, Dr. Green's report did not indicate that further testing was needed in order to determine whether Plaintiff's mental impairment affected his ability to perform work-related activities. Rather, Dr. Green clearly found that Plaintiff's mental impairment did not limit his ability to perform work-related activities.

IV. Step Five Analysis

At the fifth and final step of the requisite sequential evaluation procedure, the burden shifts to the Commissioner "to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given [his] age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted). Applying the Medical-Vocational Guidelines, or "grids," the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

At the time of the hearing, Plaintiff had attempted only a brief period of work at a fast food restaurant. Although he stated he was slow at performing this job, he also testified that he quit the job because of diabetes-related symptoms and not because of a mental impairment. Moreover, Plaintiff stated that he was not working only because he was having difficulty controlling his blood sugar levels.

The ALJ found that Plaintiff's allegation of disabling impairments due to diabetes and his mental impairment was not fully credible. The ALJ noted that the record contained evidence that Plaintiff was not compliant with his diabetic treatment. The record supports this observation. (TR 183, 247). Although Plaintiff complained to the consultative physical examiner, Dr. Saidi, in November 2007 that he could not work because of fatigue and lack of energy (TR 228), Plaintiff stated to his treating doctor five months earlier that he had regularly been playing basketball and going to a gym and had intentionally lost about 30 pounds. (TR 247). Physical examination findings in the medical record support the ALJ's finding that Plaintiff was capable of performing the exertional requirements of light work. Although Plaintiff asserts that the ALJ could not apply the "grids" due to the limiting effects of Plaintiff's nonexertional mental impairment, there is uncontroverted medical evidence in the record, which the ALJ appropriately chose to rely on, that Plaintiff's mental impairment did not limit his ability to perform the recognized basic mental work-related activities required for unskilled work. No error occurred with respect to the application of the grids under the circumstances present here. Hence, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before __February 3rd__, 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); cf. <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this __14th__ day of __January__, 2011.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE